Case number 10-1325. People v. Samuel Velez. All right, counsel, if you could approach and let us know who you are and who you represent. Good morning, Your Honor. Sarah Curry from the State Appellate Defender. I represent Samuel Velez. All right, Ms. Curry. I'm Assistant State Attorney Tasha Marie Kelly on behalf of the people. Okay. Tasha Kelly. Okay. Fifteen minutes per side. We sort of burned some time there. We might be a little more strict on you here, but we'll do our best. Sure. I'm not going to let him ask as many questions as he asked on the other one. He thinks he has a mute button on me, but this clicker was born without a mute button. This one's real simple, so may it please the Court. Samuel Velez was charged with child abduction in that he intentionally attempted to lure J.H., a child under the age of 16, into a motor vehicle without the consent of her parents for other than an unlawful purpose. But what was this unlawful purpose, this criminal intent? Prior to trial, Sam filed a motion to dismiss, arguing that the statute was vague as applied to him because he did not know what the unlawful purpose was. This motion was denied. He then filed a motion for a bill of particulars, asking the Court to force the State to tell him what the unlawful purpose was so that he could prepare his defense. This motion was also denied. At trial, Sam tried to cross-examine the police officer about what was found during the search of the van, but he was thwarted in this attempt by the Court sustaining the State's objections on relevancy grounds. Then the jury was instructed that the State didn't even have to prove an unlawful purpose. They could simply presume it. Sam was found guilty of child abduction without ever knowing what unlawful purpose he was alleged to have, what criminal intent he supposedly had. And despite this, at sentencing, the trial court made a finding that the offense was sexually motivated and Sam now has to register as a sex offender. All of this without any evidence in this record that there was an unlawful intent, that there was a criminal unlawful intent. Your case comes or goes on the jury instruction, basically. So I would ask you to hone in and tell me why that's either irrational or unreasonable. Sure. IPA 8.11a instructs the jury that if they found that Mr. Velez attempted to lure or lure J.H., they could presume that it was done so for an unlawful purpose. The State was not allowed to rest its entire case, however, on this presumption. There has to be a rational connection between the proven fact and the presumed fact. There has to be a substantial insurance that it's more likely than not that the proven fact leads to the inferred fact. So it comes to the mens rea. This is all about the mens rea. And the State cannot, there has to be corroborating evidence in order for this permissive presumption to not violate his rights to due process. And there is no evidence corroborating any unlawful intent. Samuel Velez was driving his work van down 95th Street. He passed J.H. He slowed down. He honked. He waved. She ignored him. He continued on. She walked another quarter of a mile and turned right, and he was parked there. He had no way of knowing where she would turn. She couldn't turn right anywhere in between because there was a park there along 95th Street. From Nashville to where she turns on Oak Park on the north side of that route as she walks. Well, he would have no idea. There's nowhere else for her to turn. Well, he would have no idea that she wouldn't walk straight or that she wouldn't turn left or that she would stop in a shop along the way or that her mother picked her up, you know, 10 feet from where. She turns the corner. She passes his van. The windows roll down. He says, hey, baby girl, do you need a ride? She ignores him. He says, are you on your way home from school? Do you need a ride? At that moment, she sees her mom, and she says, no, I see my mom, and she heads off to her mom. He drives away. There is no criminal intent at all under these facts. And the jury, the state never suggests an unlawful intent. They vaguely talk about some unlawful intent throughout their argument. They don't answer the bill of particulars. The court dismissed the ‑‑ But there's nothing that they could have given them in the bill of particulars. Because there was no evidence of an unlawful intent. I'm saying is they already had what they had. They had the beard shaven. They had the following. They had him talking. He didn't follow her. So they don't need anything else. Talking to somebody, there's no criminal intent. There's no criminal intent. How do we distinguish what is adequate for criminal intent? You're saying there isn't. They're saying there is. And this is a tough statute because the presumption is that anybody that's following young people are not good people. So the burden is almost on the defense attorney to prove that there is no mens rea. Which makes the presumption unlawful. It cannot shift the burden. That's when a permissive presumption becomes a mandatory presumption if the defense has to then prove ‑‑ Well, they shifted it. You haven't shifted it back. He tried to show there was no unlawful purpose by cross examining the police officer. Were there condoms? Was there pornography? Was there a weapon? Was there anything dangerous? Give me something. Tell me what the unlawful purpose is. You don't need any of that in order to have the requisite mens rea to do something wrong when you're trying to get a kid to go into your car. Do you? Do you need a gun? Do you need a condom? Are you telling us that you need something like that? You need something more than a mere offer of a ride home. You need the mens rea to do something unlawful with that child. We can infer criminal intent from the circumstances, right? And we've got an individual who changed his appearance, an individual who's referring to a young school age girl as baby girl, an individual who's keeping pace with her as she's declined a ride but maintains a pace or surveillance, if you will, who motions her towards his vehicle after she's already declined any invitation to go near him or to take a ride. We have a guy also who's denying to the police that there was ever any such encounter and didn't know what they were talking about. Aren't those circumstances and facts on which we can infer criminal intent and an unlawful purpose? Not sufficiently to allow a presumption. Not sufficiently to make it more likely than that. And all of those things can be responded to. He gets a call from his work that he needs to report to the police station, which he voluntarily does. Free calls. Right. He could have been in another part delivering. Which is unusual. He was not where he was supposed to be. He had finished all of his deliveries for the day. He was having his lunch. They have him inside the burrito place. The problem that I'm having here is that you say in your brief that there's no corroborating evidence, and I think that's a pretty bold thing to say in light of the circumstances, hang on, that my colleague just mentioned here in oral argument. If you stood before us and had a case where when this girl's mother, you know, happened to come by and this man stayed there and talked to her and said, I was just making sure that she was okay, and we didn't have a situation where he speeds away. We didn't have a situation where he drove away. We didn't have a situation where he gave himself a dry shave to get rid of his goatee. We didn't have a situation where he went in and denied that there was any kind of encounter at all with this girl. You might have a much better argument on the absence of mens rea, but the corroborating evidence that was I think delineated pretty fairly by my colleague here does seem to suggest requisite mens rea. Two responses. One, he, yes, he shaved his goatee, but he knows he's in trouble. He knows he screwed up. He's in trouble with his job. He's now going to the police station. He talked to a girl he shouldn't have. He made a mistake. In today's day and age, you shouldn't do that. But we don't put people in prison for that. Why shouldn't he have talked to her? For this precise reason, because people assume that you are doing it for some unlawful purpose, even when there's no direct evidence suggesting a criminal intent. He screwed up. He shaved his goatee. He was nervous. He was scared. But that doesn't prove that he had a criminal intent. What was his criminal intent? Well, isn't, counsel, isn't that really invading the province of the finder of fact? All of these things are available. Reasonable inferences should and can be made by the evidence. And it's the fact finder, in this case, the jury, who takes all this to determine if they can conclude that there was an unlawful purpose. And that's a fair thing to do, isn't it? But they were allowed to presume it. Taking off when mom arrives and all that, denying you had any encounter. That's all indicia of consciousness of guilt, isn't it? But the state didn't have to prove it beyond a reasonable doubt. So we don't know that the jury found that to be. But this is my original question. What was wrong with the instruction? It doesn't appear that the jury had any problem with the instruction. Well, we don't know how the jury interpreted the instruction. We know that the jury was worried about punishment. We know that the jury, you know, maybe had some question. Did the jury ever give the judge a question for counsel? Yes, asking about sentencing. About this issue? No, not about this issue. And the instruction itself just mirrored what the statute said, am I correct? Well, the statute actually still has the mandatory presumption that hasn't. Right. But I think it's also instructive to Woodrum. This case is the anti-Woodrum where, you know, the Illinois Supreme Court spent a lot of time talking about the unlawful purpose in that case. And in that case, the defendant had given a statement saying that he took these videos of these girls. He thought about masturbating. He wanted to have sex with them. I mean, things that provided the defendant with the knowledge of what the unlawful purpose was that he was alleged to have conducted. And in this case, Mr. Vales had no idea. He has the entire criminal code. And he tried on cross-examination to show that there was no unlawful purpose, and he wasn't allowed to do this. All these issues go together. He desperately wanted to know what it was that they thought he had done wrong. You think denying the bill of particulars caused him to wildly speculate what in the world they could possibly be thinking? I was at, in my mind, when I asked this girl, this baby girl, if she wanted a ride, is that what you're saying, that he had the whole criminal code that he had to consider? It's possible.  A lot of things are possible. Is it likely? He could have been picking her up to take her to a tattoo parlor. He could have. Well, that was the argument. That was what the appellate court said in the case you cite in the brief. Well, and in that case, there's also more. Cavalier with it. That's what the court said, right? Now that's being cavalier in response to this, putting in tattoo parlor language and things of that nature, because that's silly. But in that case, that case had more evidence of an unlawful purpose than this case. In that case, he used his car to block her. And he said, get in my car. In this case, you have nothing more than an offer of a ride home. But we're going all the way back to, again, the language of the statute. You're saying it's unreasonable. Not the language of the statute. The presumption, the permissive presumption. Right. But you haven't really told us why. Because in all the other cases, there's more. There's more than this. There's nothing here that specifically, that shows a criminal intent. I don't think it's sufficient. In your brief, you say there's no corroborating evidence. There is no corroborating evidence of a criminal intent. There's evidence here that when somebody else was aware of what was going on, and the little girl ran to her mother's car, that this man left, that he changed his appearance, and that he denied having any such encounter when he talked to the police after thrice being contacted by his employer. You say that's no corroborating evidence. I don't know that that's necessarily true. Well, he voluntarily went to the police station. He gave them his location of right there. He was nervous. He was scared. One final argument. At sentencing, the trial court made a finding that this was sexually motivated. And there's certainly no evidence in the record, and it has to be one or more facts of the underlying offense indicating conduct of a sexual nature. And there isn't any kind of... Oh, baby girl. Baby girl could... Well, a 14-year-old from a 30-something-year-old. It's a greeting. Hey, baby girl. Yeah. We're going to force a man to register as a sex offender for saying hey, baby girl? It may be a greeting from grandpa to granddaughter, but it's not a common greeting to a stranger on the street when you're in your 30s and she's 14. It's not a common greeting. I beg to differ. All right. We'll disagree on that. Okay. Our position is that there are no facts. I'm not going to ask the question I was thinking. There are no underlying facts indicating conduct of a sexual nature, and he should not be required to register as a sex offender. Okay. Thank you. Thank you. May it please the Court, I'm Assistant State's Attorney Tasha Marie Kelly on behalf of the people of the State of Illinois. Sorry. The facts and circumstances in this case clearly indicate that defendant had a criminal intent in mind when he initiated contact with the 14-year-old girl who was leaving for the day outside of Simmons Middle School. This is a man who was supposed to be somewhere else, but instead was lawyering in a van outside of the school. He targeted this particular 14-year-old girl who was separated from the majority of the students who were in the parking lot waiting for their parents. He smiled at her. He beeped his horn. He tried to get her attention, and his purpose was to isolate her to get her into the van away from the street, away from the other individuals. She clearly indicated to him that she did not want to have contact with him. She pulled up the hoodie on her jacket. She walked faster. She tried to get away from him. And in response, he pulled his van over to a place where he knew she would have to pass by him. He waited for her. He rolled his window down. He leaned out of the passenger side window, and he spoke to her. And when he spoke to her, that's the most telling indication of what his intent was. He didn't say something which would be appropriate to say to a 14-year-old girl like, are you lost? Do you need help? Would you like to use my cell phone? Instead, what he said to her was, hey, baby girl, do you want a ride? It's inappropriate. It's overly familiar. And it's arguably sexual in its nature. Again, she attempted to ignore him. She attempted to get away. And instead, he asked her again, do you need a ride? And thankfully, she saw her mother. She fled. And what did he do? He speeds away. He doesn't attempt to explain himself. He doesn't attempt to assuage this mother who testifies that she observed this and that it seemed strange to her and that she was concerned about what was going on. Now, defense, this whole case, really, and I have difficulty with this. It's almost as though there should be one more thing. Like, you've got the cases she cited, and they show substantially more of intent. But here you have, I would say, the minimum of intent. Not that you don't have, but the question being, should there be something more? Well, I think that when you're looking at the permissive inference portion of it, you're looking at for other than lawful conduct. So for that purpose of it, there's no need to show that the unlawful contact was sexual in nature. It can be any kind of unlawful conduct. So, for instance, kidnapping. Certainly his attempt to get her to get into the van is a great indication that it could be an attempt to try to kidnap her. So in terms of what we have, while it may not be as clear cut as in, say, the Woodrum case where he makes a detailed confession, there's clearly an indication that his intent with this girl was for other than lawful conduct. And that's corroborated by the fact that he takes specific actions after the initial contact with J.H., not only to conceal his identity by shaving his goatee, but he makes conflicting statements telling, you know, during the telephone conversation with his boss, I saw this cute girl and I whistled at her. But when he speaks to both the police and the assistant state's attorney, he denies any contact whatsoever. In our brief we cited for you a case which talks about how under those circumstances when you're speaking with the police and they're asking you about a situation like that, an innocent person with an innocent explanation would reasonably be expected to provide that information. This defendant did not. Should we be troubled, though, by the objections that were made to trying to find out what was in the van, to see if there was anything in the van that would be consistent with the criminal purpose? Why were the trial court's rulings appropriate in your judgment? I would respond to that three ways. First of all, the fact that the defendant had a gun, did not have a gun or a weapon, was established during the direct testimony of the victim. And whether a defendant had condoms or duct tape or pornography, which were the other three questions he wanted to ask, that doesn't prove or disprove the fact that's in question here. And that is what makes testimony relevant. Were they also beyond the scope? Was that part of the... And that would be my second answer to you, which is that the purpose of cross-examination is to discredit or to impeach testimony that was given on direct. And during the direct examination, all that was asked of Officer Williams was his conversation with J.H., his initial conversation with her and his mother, his conversation with the defendant, his obtaining the videographic evidence from the Lucky Burrito, and the lineup identification that was done. There was no questions about the search of the van. The search of the van wasn't even brought up until cross-examination when defendant brought it up. My third response to you would be because defendant had the opportunity to elicit that same information when he recalled Officer Williams. He recalled Officer Williams and asked him about other things and he didn't bother to ask him about the questions that weren't allowed on cross-examination, which he certainly could have done so. If there are no other questions, for those reasons and for those in the people's brief, we would ask you to affirm the defendant's conviction. Thank you. Thank you. Briefly in regard to the cross-examination issue, it was not established that there was no gun or weapon. She said she didn't see anything. That doesn't mean that there wasn't anything in the van. Secondly, the objections were made on relevance grounds, not on beyond the scope grounds. Every single objection, relevance, relevance, relevance, sustained, sustained, sustained. And so even if they called the officer again, why would they re-ask these questions? They were sustained on the grounds of relevancy, not beyond the scope, which they then might have asked had they, had the objection been for a different reason. If all of the answers to those questions were no, there wasn't a condom, there wasn't a gun, there wasn't this, there wasn't that, would any of that go against what we're calling at least potentially corroborating evidence, that leaving the scene, shaving the goatee, you know, the, you know, the, you know, the gun, the gun, the gun, the gun, the gun, the gun, the gun, the gun. The issue with the Lucky Burrito and what, the comment that he made to his employer versus the comment that he made to the police officer. Would any of that? It certainly could have raised a doubt in the jury's mind that, you know what, maybe this guy didn't have an unlawful purpose. Maybe, you know, it certainly could have, and that's why they asked the questions. You know, I mean, certainly if there was something found in the van, that would have been relevant to the issue of unlawful intent for the state. As it wasn't, as there wasn't anything found in the van, that certainly... Would it have been relevant for the state to induce a trial that there was duct tape in the van, for instance? Possibly. Tie somebody up with duct tape? I mean, he could have gone on, if these questions had been allowed, maybe he would have asked if there was rope, if there was some other things, but his cross-examination was thwarted. Also, the state's attorney points out that, you know, he could have been trying to kidnap her. The state's attorney also says that this is clearly sexually motivated. This is the problem here, that it could have been anything, because there is no direct evidence, there's no corroborating evidence showing a criminal intent, a specific criminal intent. There is no evidence... Maybe because the mom showed up. But we're going to send somebody to prison simply because... No, simply because he was trying to lure a girl into his car that he didn't know and he was making suggestive comments to, and then tried to change his appearance afterwards. That is the basis upon which he was convicted. If there are no further questions, thank you. Thank you. All right. Thank you for the briefs and the arguments, and we will get back to you directly with an opinion. Thank you.